Curtis W. GREER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–9707–CR–311.

Court of Appeals of Indiana.

Jan. 27, 1998.

Transfer Denied April 8, 1998.

James D. Crum, Coots, Henke & Wheeler, Carmel, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Suzann W. Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Curtis W. Greer appeals the trial court's findings and judgment which followed a fact-finding hearing on his alleged probation violation. We restate the one issue he has raised for our review: Did the trial court properly determine that Greer knowingly, intelligently, and voluntarily waived his right to counsel?

Affirmed.

## FACTS

On September 5, 1991, a jury found Greer guilty of theft, a Class D felony, and burglary, a Class C felony. Greer received a three-year suspended sentence for the theft conviction; for the burglary conviction he received an eight-year sentence, five years of which was executed and three years of which was suspended. Greer served the executed portion of his sentence and was released from prison on June 28, 1993. He was then placed on probation which was to last for six years.

On July 18, 1996, the State filed an "Information of Violation of Probation" which alleged that Greer, by failing to report to the probation office at least once a month, violated a condition of his probation. An initial hearing on Greer's alleged probation violation was held on March 27, 1997. During this hearing the following colloquy occurred between Greer and the trial court:

THE COURT: [Y]ou have a right to be represented by an attorney. And if you wish to have an attorney and can't afford one an attorney will be appointed to represent you. Let me ask Mr. Curtis Greer first, are you making arrangements to get an attorney?

CURTIS GREER: No, ma'am. I just plan on pleading—just plead guilty and . . .

THE COURT: To admitting the allegation here?

CURTIS GREER: Right.

THE COURT: Okay. And Mr. Greer, let me be sure that you understand that you have a right to have an attorney and that one can be appointed for you at no cost to you if you wish, do you understand that?

CURTIS GREER: Yes.

R. 52. The court then advised Greer of his rights:

Well, we'll go through the rest of your rights . . . and proceed with taking any plea that you want to make after being sure that you understand the rights that you have. You can't be compelled to make any statement or to testify against yourself at any hearing. . . . [Y]ou, of course, have a right to remain silent. You also have a right to have a hearing on the allegations contained in these petitions and to have the State of Indiana prove that you violat-

ed your probation by a preponderance of the evidence presented here in open court. You have a right to face any witnesses against you and to see, hear, question and cross examine them. The Court would have witnesses here by issuing subpoenas if you request. to have those witnesses present to testify on your behalf. If you admit the allegations contained in the petitions you would be waiving those rights. If the Court decides to revoke your probation you have a right to appeal that decision. And if the Court finds that you have violated your probation either after a hearing or based on your own admission then a number of things can happen. One thing, of course, would be to require you to serve the sentence that's been suspended. Another option available to the Court would be to return you to probation on the same terms. Another option would be to change the terms of your probation and perhaps add additional probation responsibilities.

R. 53–54. The court asked Greer whether he understood these rights, and Greer replied that he did. The court then asked Greer whether he still wanted to admit that he violated the terms of his probation. Greer said yes. After the prosecutor questioned Greer about his probation violation, the court stated:

I'll make a finding then, on Mr. Curtis Greer's case that he has admitted the probation violations and that there is a factual basis for those admissions and we'll show in today's record that the admissions have been made and accepted by the Court.

R. 56.

On April 24, 1997, an evidentiary hearing on Greer's alleged probation violation was held. Greer was not accompanied by counsel at this hearing in which the court found that Greer violated his probation. After this hearing, the court required Greer to serve three years in prison and ordered that Greer be "discharged unsatisfactorily from probation" at the completion of his prison term. R. 39.

## DISCUSSION

Greer claims that, at the initial hearing on his alleged probation violation, the trial court did not properly determine that he

knowingly, intelligently, and voluntarily waived his right to counsel. Greer supports his claim by noting that the trial court did not inquire into his educational background and familiarity with legal procedures, and that the trial court failed to inform him of the pitfalls of self-representation.

 When a criminal defendant waives his right to counsel by electing to proceed *pro se*, we must decide whether the trial court properly determined that the defendant's waiver was knowing, intelligent, and voluntary. *Seniours v. State*, 634 N.E.2d 803, 807 n. 1 (Ind.Ct.App.1994) (noting that, although waiver of the right to counsel was indicated by the defendant's conduct, "the question before us is whether the court satisfied its due process obligation of ensuring, on the record, that the waiver was knowing and voluntary.").

> Whenever a defendant proceeds *pro se*, it is incumbent upon the trial court to determine if the waiver of the right to counsel is made knowingly and voluntarily. *Kirkham v. State* [, 509 N.E.2d 890, 892 (Ind. Ct.App.1987) ]. To make such a determination, the trial court must conduct a hearing to determine the defendant's competency to represent himself and also to establish a record of the waiver. *Dowell* [*v. State*, 557 N.E.2d 1063, 1066 (Ind.Ct. App.1990) ]. The record must show that the defendant was made aware of the "nature, extent, and importance" of the right to counsel and the necessary consequences of waiving such a right. *Kirkham* [, 509 N.E.2d at 892]. "Merely making the defendant aware of his constitutional right is insufficient." *Id.* "[T]he trial court should inquire into the educational background of the defendant, the defendant's familiarity with legal procedures and rules of evidence, and additionally, into the defendant's mental capacity if there is any question as to the defendant's mental state." *Dowell* [, 557 N.E.2d at 1067]. However, the trial court need not specifically inquire into each of the guidelines enunciated in *Dowell.*

*Martin v. State*, 588 N.E.2d 1291, 1293 (Ind. Ct.App.1992).

We first conclude that the trial court was not required to make inquiries into Greer's educational background and familiarity with legal procedures. Even in the absence of such inquiries, the record may nevertheless reflect that the defendant's waiver of counsel was knowingly, intelligently, and voluntarily made. *See Leonard v. State*, 579 N.E.2d 1294, 1296 (Ind.1991) (holding that the guidelines set forth in *Dowell*, cited above, do not "constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary."). As we will explain below, the record indicates that Greer's waiver was indeed made knowingly, intelligently, and voluntarily.

We next conclude that, although Greer was not advised of the pitfalls of self-representation, the trial court nevertheless properly determined, on the record, that Greer knowingly, intelligently, and voluntarily waived his right to counsel. We find support for this conclusion in *Redington v. State*, 678 N.E.2d 114 (Ind.Ct.App.1997), *trans. denied.* In *Redington*, the defendant waived his right to counsel before he pled guilty to theft. 678 N.E.2d at 115, 117. The defendant later challenged his guilty plea by filing a petition for post-conviction relief. *Id.* at 115. The trial judge denied the defendant's petition after a hearing. *Id.* at 116. Concluding that the petition was properly denied, *id.* at 119, we rejected the defendant's argument that he did not make a knowing, intelligent, and voluntary waiver of counsel. *Id.* at 117. In our analysis, we recognized that the trial judge has an obligation to ensure, on the record, that the defendant's waiver of counsel is made knowingly, intelligently, and voluntarily:

> "The record must demonstrate that [the criminal defendant] is fully aware of the nature, extent and importance of the right he has waived and the possible consequences thereof so 'his choice is made with his eyes open.'" The consequence of proceeding *pro se* is the polestar of any admonishment or warning concerning waiving the right to counsel. There is no rigid mandate which sets forth specific inquiries or warnings which a trial court should make before determining that a waiver is voluntary and intelligent. Accordingly, [the law of Indiana generally requires] a warning to the effect that a defendant will

be held to the "ground rules" of trial procedure, that the defendant will be treated like an attorney, responsible for making objections and following procedural and evidentiary rules, and that the defendant be made aware of the pitfalls of self-representation.

*Id.* at 117–18 (citations omitted). We explained that "[t]he reasons for the above warnings are obvious":

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 118 (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). We then noted that a defendant who pleads guilty finds himself in a situation different from that of a defendant who proceeds to trial:

> A guilty plea hearing is, of course, a proceeding of an entirely different nature than a trial. A criminal defendant at a guilty plea hearing will not be confronted with the necessity of being educated on the subjects of trial procedure, evidence, examining witnesses or making objections.... Where the reason underlying the admonishments is absent, a trial court is not required to engage in superfluous warnings which have no bearing to the proceeding at hand.

*Id.* at 118.

The record in *Redington* indicated that the defendant was advised of his right to counsel, but it did not indicate that the defendant was warned of the pitfalls of self-representation. *Id.* at 119. On this record, we concluded that the defendant "was properly informed of his right to counsel, and ... knowingly, voluntarily and intelligently waived that right." *Id.* Summarizing our conclusion, we held that admonishments "regarding the dangers of self-representation at trial ... are inapplicable to determining whether a petitioner knowingly, voluntarily and intelligently waived his right to counsel at a guilty plea hearing." *Id.* at 119–20.

We believe that a probationer who chooses to admit his probation violation places himself in a situation similar to that of a defendant who chooses to plead guilty to criminal charges. Neither person is in danger of "conviction" at the hands of the State. It is unnecessary to warn such a person of the pitfalls of self-representation, for those pitfalls exist only when he is confronted with prosecutorial activity which is designed to establish his culpability. It is therefore clear that, when a probationer who proceeds *pro se* chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation.

In our view, the trial judge properly determined, on the record, that Greer knowingly, intelligently, and voluntarily waived his right to counsel. At his initial hearing, Greer was advised of many things, including the following: that he had the right to be represented by an attorney; that an attorney might be appointed to represent him; and that certain consequences would or might result if he admitted the alleged violation of probation. This record, which also indicates that Greer understood the trial judge's advisements, establishes Greer's knowing, intelligent, and voluntary waiver of counsel. Although Greer was never warned of the pitfalls of self-representation, such a warning was not required because Greer, by admitting his probation violation, would not be faced with the State's attempt to establish his culpability.[1]

1. We note here that probation revocation consists of two steps. "First, the court must make a factual determination that a violation of a condition of probation actually occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the

To support his contention that the trial court did not properly determine whether he knowingly, intelligently, and voluntarily waived his right to counsel, Greer cites *Seniours* and *Hagy v. State*, 639 N.E.2d 693 (Ind.Ct.App.1994). In *Seniours*, a trial court advised a criminal defendant to retain counsel for his trial. 634 N.E.2d at 804. The defendant refused to retain counsel, and the court permitted the defendant to proceed to trial *pro se*. *Id.* After the defendant was convicted, he argued on appeal that the trial court failed to determine whether he knowingly, willingly, and voluntarily waived his right to counsel. *Id.* We agreed with the defendant, reversing his conviction. We noted initially that:

The facts of the present case show that the trial court repeatedly urged [the defendant] in no uncertain terms to secure an attorney, provided him with lists of attorneys to contact, and postponed trial several times in order to give [the defendant] every opportunity to have benefit of counsel. The court hammered upon the seriousness of the charges and the potential fines and terms of imprisonment facing [the defendant]. Indeed, it may be said that prior to trial the court bent over backwards to accommodate [the defendant] and to comply with the requirements of due process. Nonetheless, there is nothing in the record to show that [the defendant] voluntarily, knowingly, and intelligently chose to represent himself.

*Id.* at 805. We went on to state that:

Absent a showing of incompetence, [one in the defendant's position] who has refused to employ counsel despite the court's entreaties need only be "apprised of the advantages of representation by counsel and the pitfalls which he might experience if he insisted on self-representation." It is incumbent upon the court to ensure that the record reflects such a statement to the

defendant, and it is this that the trial court failed to do in the present case.

*Id.* at 807 (citation omitted). We concluded that the record did not indicate the defendant's knowing, intelligent, and voluntary waiver of counsel. *Id.* at 808.

*Seniours* addressed a defendant's knowing, intelligent, and voluntary waiver of counsel within the context of a criminal trial; *Hagy* addressed this matter within the context of probation revocation proceedings. In *Hagy*, the State alleged that the defendant violated her probation. 639 N.E.2d at 694. Before the evidentiary hearing on her probation revocation, the defendant was advised by the trial court that she was entitled to an attorney and that if she were indigent she could be represented by appointed counsel. *Id.* At the hearing, the defendant appeared without counsel, and the trial judge asked the defendant whether she would be representing herself. *Id.* After the defendant answered in the affirmative, the probation revocation hearing proceeded. *Id.* At the end of the hearing, the trial court revoked the defendant's probation. *Id.*

On appeal, the defendant argued that she did not knowingly, intelligently, and voluntarily waive her right to counsel. *Id.* The State responded by arguing that the defendant "waived her right to counsel by her background, experience, and conduct." *Id.* We reversed the trial court's judgment, holding that "[t]he record does not support the State's argument that [the defendant] knowingly, intelligently, and voluntarily waived her right to counsel." *Id.* at 695. We observed that the defendant "was never advised of the dangers and disadvantages of proceeding *pro se*." *Id.*

Greer's reliance on *Seniours* and *Hagy* is misplaced. In *Seniours*, the defendant challenged the State's allegations by putting on a defense at trial. 634 N.E.2d at 808. In

---

probation." *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind.Ct.App.1997). Greer properly participated in the two steps of probation revocation. The first step occurred at the initial hearing in which Greer admitted his probation violation, and in which the trial judge made a factual determination that the violation had occurred. The second step occurred at the evidentiary hearing in which the trial judge determined that the

violation warranted revocation of Greer's probation. But at neither hearing did the State attempt to establish Greer's culpability. During the initial hearing, the prosecutor did not question Greer until after he admitted his violation. And at the evidentiary hearing, Greer's culpability was not at issue, for the only question before the court was whether the violation warranted revocation of his probation.

*Hagy*, there is no indication that the defendant intended to admit the State's allegations. 639 N.E.2d at 694–95. In either one of those cases, the defendant, because he might have been faced with the State's attempt to establish his culpability, was entitled to be advised of the pitfalls of self-representation. But Greer decided not to contest the State's allegations; he instead decided to admit them. Because Greer's decision meant that the State would not be attempting to establish his culpability, it was unnecessary for Greer to be advised of the pitfalls of self-representation. We therefore conclude that the trial court properly determined, on the record, that Greer knowingly, intelligently, and voluntarily waived his right to counsel.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.