**Delvin E. BOYLE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 44A04–9008–CR–373.

Court of Appeals of Indiana, Fourth District.

Dec. 31, 1990.

Randy Coffey, Public Defender, Angola, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Delvin E. Boyle, appeals from his sentencing on two (2) counts of Dealing in Cocaine, class B felonies. We affirm.

### Issue

Defendant presents one (1) issue for our review, which we restate as follows:

Did the Defendant "knowingly, voluntarily and intelligently" waive his right to counsel at the sentencing hearing?

### Facts and Procedural History

On March 8, 1989, the LaGrange County Prosecutor's Office filed an Information, which charged Defendant with Dealing in Cocaine. Defendant appeared at the initial hearing with his counsel, J. Scott VanDerbeck. Thereafter, VanDerbeck moved to withdraw from the case, which was granted on April 7, 1989. Defendant was then represented by Douglas D. Seely, Jr., who entered his appearance on April 3, 1989.

On September 25, 1989, Defendant filed his Motion to Enter a Plea of Guilty. After conducting a hearing, the court accepted the guilty plea of Defendant. The matter was then scheduled for a sentencing hearing on October 26, 1989.

Thereafter, the sentencing hearing was continued on several occasions because of certain health problems that plagued attorney Seely. Defendant was kept advised of the situation, and he consented to the delay in sentencing. The matter was eventually reset for April 27, 1990.

On April 17, 1990, Seely determined that his health had not improved to the point where he could provide representation "in a legally competent manner." Seely realized he would have to withdraw from the case, and he informed his client of this on or about April 17, 1990. Defendant did not object to the withdrawal, and it was granted at the sentencing hearing on April 27, 1990.

After granting the withdrawal motion, the trial court informed Defendant that he had the following three options: (1) he could hire another attorney; (2) the court could appoint public defender Randy Coffey to represent him; or (3) he could proceed to represent himself. With respect to this last option, the trial judge warned Defendant that this was a "very serious case." The judge also emphasized that he could not sanction or recommend such self-representation. The court then granted a recess for Defendant to confer with Coffey (who attended the hearing at the court's request).

When the court reconvened after recess, Defendant expressed his desire to proceed with the sentencing hearing and to represent himself. Coffey informed the court that he had discussed the options with Defendant, including the possibility of a continuance so that he could properly prepare for sentencing, and proceeding with the hearing with him present in an advisory capacity as standby counsel. Defendant elected to proceed with Coffey as standby counsel in the event he needed any legal advice. In addition, the court inquired about whether Defendant had any legal training, and discovered that Defendant had received some training in military law while in the Army. The court then allowed the hearing to proceed with Defendant representing himself and Coffey as standby counsel.

### Discussion and Decision

Defendant argues that at the sentencing hearing "[h]is right to counsel was not fully explained to him, and the danger of proceeding [*pro se*] without counsel was not made apparent to him." In support, he cites several cases which state that "[m]erely making the defendant aware of his constitutional right to counsel is insufficient"; the trial judge must also "establish a record showing that the defendant was made aware of the nature, extent, and importance of the right and the consequences of waiving it." *Kirkham v. State* (1987), Ind.App., 509 N.E.2d 890, 892, *reh. denied, trans. denied; Blinn v. State* (1982), Ind. App., 441 N.E.2d 49, 51.

■ We first note that both the United States Constitution and the Indiana Constitution guarantee the right to counsel. *Jackson v. State* (1982), Ind.App., 441 N.E.2d 29, 31. The law is clear that a criminal defendant has this right even at a sentencing hearing. *See, Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *Guajardo v. State* (1989), Ind.App., 544 N.E.2d 174, 176. Correlative to the right to counsel is the right of a criminal defendant to waive counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 833–835, 95 S.Ct. 2525, 2540–2541, 45 L.Ed.2d 562 (1975); *Kirkham*, 509 N.E.2d at 892. If a defendant elects to represent himself, it must be shown that he knowingly and voluntarily waived his right to be represented by counsel. *Id.* Therefore, the trial judge must establish a record showing not only that he made the defendant aware of his constitutional right to counsel, but also that the defendant was made aware of the nature, extent, and importance of the right and the consequences of waiving it. *Id.; Phillips v. State* (1982), Ind.App., 433 N.E.2d 800, 802.

It is undisputed in this case that the trial court satisfied its first obligation—it made the Defendant aware of his right to counsel on several occasions. The record shows that the trial judge stated:

Further you understand you have a right to be represented by [a] competent attorney at all stages or proceedings, including trial and appeal. If you can't afford to pay a lawyer now or at a later date, the court would appoint counsel for you at public expense.

\* \* \* \* \* \*

You can hire another attorney or I would consider appointing Mr. Coffey because I sent him over there one day ... Even though you may not be indigent, but I would consider putting Mr. Coffey in at public expense to represent you in the sentencing hearing and anything flowing out of that.

Instead, the parties focus their arguments around whether the trial court satisfied its second obligation—making the Defendant aware of the consequences of waiving the right to counsel. While the trial court's warnings about self-representation were not that detailed or extensive, they were sufficient under the particular facts and circumstances of this case.

The record shows the judge made several warnings about self-representation. He indicated that this was a "very serious case," and he could not sanction or recommend that the Defendant proceed *pro se* and represent himself. The judge then granted a recess, and the public defender also explained the three options (including self-representation) to the Defendant. Upon returning from recess, Defendant informed the court that he elected to proceed *pro se* with Coffey as standby counsel in case he needed legal advice. No one forced the Defendant to proceed in this manner, as the judge had indicated his willingness to appoint counsel and continue the sentencing hearing. In addition, the judge also discovered that Defendant had some training in military law, as evidenced by the following colloquy:

COURT: You've had no legal training.

BOYLE: Training. What do you mean? I got drafted in the service.

COURT: Well, they gave you something about military justice. Everyone in the service gets a little military law training.

BOYLE: Yeah.

COURT: I don't know. What is it? Three hours or four hours? I got mine at Lackland Air Force Base. I think maybe about three sessions. Tell you about general court-martials and special court-martials and presumption of innocence.

BOYLE: Yeah.

The judge then allowed the hearing to proceed with standby counsel as requested. Therefore, many of the disadvantages that a layman would suffer were obviated. *Jackson*, 441 N.E.2d at 33.

We also note that Defendant was effective in presenting his arguments as to sentencing, as the trial court cited to several of the mitigating circumstances he advanced in reaching its decision on an appropriate sentence.

When viewed in the context of the facts and circumstances of this case, we cannot say that Defendant's waiver of his right to counsel was involuntary, unintelligent and unknowing. Affirmed.

BUCHANAN, J., concurs.

MILLER, P.J., dissents with opinion.

MILLER, Presiding Judge, dissenting.

I dissent. The trial court did not satisfy its obligation of informing Boyle of the advantages and disadvantages of counsel and, therefore, Boyle's waiver of the right to counsel could not have been knowing, intelligently and voluntarily made. I would remand for resentencing.

The majority opinion, among other things, stands for the proposition that a person who serves in the armed services has sufficient legal knowledge and training to waive his right to counsel without being informed of the advantages of counsel and the disadvantages of proceeding without counsel. I cannot subscribe to this theory.

Whenever an accused represents himself, the record must demonstrate not only that he had the knowledge of his right to counsel, but also that if he proceeds without counsel, he does so fully aware of the *nature, extent* and *importance of the right* and the *possible consequences* of waiving it. *Phillips v. State*, (1982), Ind. App., 433 N.E.2d 800. If an accused is not advised of the consequences of proceeding *pro se*, at best he has merely been made aware of his right to counsel, but cannot knowingly and voluntarily waive his right to representation by counsel. *Kirkham v. State* (1987), Ind.App., 509 N.E.2d 890.

Although the judge did warn Boyle about self-representation, indicating that this was a "very serious case" and that he could not recommend that Boyle proceed *pro se*, the record is devoid of meaningful instruction on the value of counsel. Therefore, Boyle's choice to proceed *pro se* could not have been a knowing and intelligent decision, but was based instead on his desire to "get on with it" after months of waiting in jail without the opportunity for bond. The majority points out that Boyle was advised by public defender, Randy Coffey, outside of the presence of the court during a 15 minute recess, regarding the three options presented by the court—1) hire another counsel, which would require another continuance, 2) accept representation by the public defender at public expense, which would also require a continuance, or 3) proceed that day representing himself. There is nothing in the record to indicate that the public defender advised Boyle of what disadvantages he would *risk* in representing himself at sentencing.

I recognize that the trial judge was in a difficult position and was sensitive to the tension between the right to counsel and the right of self-representation. The judge did pointedly advise Boyle against self-rep-

resentation, but the court did not go far enough in making a record which would establish that Boyle knew what rights he was waiving.

Boyle was not informed that 1) he was entitled to subpoena and call witnesses and to present information in his own behalf, IC 35–38–1–3; *Miller v. State* (1987), Ind., 517 N.E.2d 64; 2) participation of counsel at the sentencing stage is important in the evaluation of the relevance and significance of aggravating and mitigating factors, *Gardner v. Florida* (1977), 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393; 3) debate between adversaries aids in the truth seeking function which is served by providing counsel the opportunity to comment on facts which may influence the sentencing decision. *Id.* at 360, 97 S.Ct. at 1205; 4) counsel aids when the accused is confronted with the intricacies of the law and the advocacy of the public prosecutor, *United States v. Gouveia* (1984), 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146; 5) a defendant who represents himself is held to the same standards as an attorney as to the law and procedure and the State will be represented by experienced professional legal counsel, *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063.[1]

The court should also inquire on the record into the defendant's mental capacity, educational background, and his familiarity with legal procedures and rules of evidence. *Id.* Finally, the defendant should be informed that if he chooses to proceed *pro se*, he cannot later claim inadequate representation. *Id.* Without being fully advised, Boyle did not have sufficient information to make a knowing, intelligent waiver of his right to counsel.

The majority finds that Boyle's waiver of his right to counsel was not involuntary, unintelligent and unknowing based on the

---

1. *Dowell* involved a question of pre-trial waiver, rather than waiver at the sentencing stage. *Dowell* also mentioned that the defendant should be informed that an attorney has skill and expertise in preparing a proper defense which includes investigating and interrogating witnesses, gathering documentary evidence, presenting favorable statements on the defendant's behalf, recognizing objectionable, preju-

dicial evidence and making proper objections. These are important at the sentencing stage as well. Boyle was employed. He could have called his employer as a witness. Boyle did introduce documentary evidence regarding the satisfaction of a judgment. An attorney could have presented a favorable statement on his behalf or made relevant objections to prejudicial evidence.

facts and circumstances of this case. The majority refers to the fact that the court permitted Coffey to act as standby counsel and that Boyle had some training in military law. The appointment of standby counsel is not a substitute for an advisement of the dangers and disadvantages of self-representation. See *Dowell, supra* at 1066, n. 3. Furthermore, the court's finding that Boyle had training in military law does not persuade me that Boyle had legal training or familiarity with legal procedures and rules of evidence. Boyle stated that he had graduated from high school and, in response to the court's question whether he had any legal training, Boyle replied that he was drafted into the service in 1981. The trial court suggested that he must have received some military law during basic training.[2] The information received during basic training concerning military law (saluting an officer, for example) could hardly be characterized as "legal training," and certainly could not be the equivalent of training which would prepare a defendant for a criminal proceeding.

The majority also observes that Boyle was effective in presenting arguments at sentencing and the trial court cited mitigating factors which Boyle had raised. Additionally, I note that the record indicates that the trial court gave Boyle the benefit of the doubt on his objections to information contained in the presentence report. However, the issue here is not whether Boyle can show harm or prejudice. The only remedy for an invalid waiver of the right to counsel is to remand to the trial court for resentencing. See *U.S. v. Allen* (1990 10th Cir.), 895 F.2d 1577, citing *Penson v. Ohio*, (1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (harmless error analysis does not apply to invalid waivers of counsel) and *Satterwhite v. Texas* (1988), 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284, (fundamental importance of assistance

of counsel does not cease as the prosecutorial process moves from the trial even to the appellate stages).

2. In this exchange (quoted by the majority), the judge made statements to the effect that everyone in the service gets a little military law training and then recited his own experience. The defendant responded "Yeah". This response was amibiguous and not informative for our purposes. Boyle might very well have been responding to the judge's statements by saying "[I]s that right". In any event, I know of no authority which distinguishes people with military experience from all other defendants who must be informed of their rights. The next logical step in this theory is to distinguish those people who regularly watch courtroom dramas such as Perry Mason.